UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

TIMOTHY POPE,

        Defendant.
_____/

Case No. 1:07-CR-155

Hon. Paul L. Maloney

**OPINION AND ORDER DENYING DEFENDANT'S RENEWED MOTION FOR JUDGMENT OF ACQUITTAL AND MOTION FOR NEW TRIAL**

      This matter is before the Court on Defendant Timothy Pope's Renewed Motion for Judgment of Acquittal and Motion for New Trial.  The United States of America has responded in opposition to both Motions.  The Court has reviewed the briefing and discerns no reason for oral argument.  *See* W.D. Mich. LCrR 47.1(d) & 47.2(d).

## I. BACKGROUND

      Defendant was indicted on December 12, 2006 in the Western District of Michigan on one count of conspiracy to distribute more than five grams of cocaine base, along with co-defendant Ervin Fance**.**  On October 25, 2007, the jury returned a verdict finding Defendant guilty of the crime charged.  After moving for judgment of acquittal at trial, *see* Fed. R. Crim. P. 29(a), the Court denied Defendant's Motion finding that the evidence presented was sufficient to sustain his conviction.

## II. LEGAL STANDARDS

      When reviewing a motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The Court must accord full deference to "the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* A defendant making such a challenge bears a very heavy burden. *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999).

When reviewing a motion for a new trial, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The defendant has the burden of proving that a new trial is warranted. *United States v. Pierce*, 62 F.3d 818, 823 (6th Cir. 1995).

**III. ANALYSIS**

A. Motion for Judgment of Acquittal

Defendant argues that based on the evidence presented at trial, judgment of acquittal is warranted. Although the jury adjudicated Defendant guilty of delivering cocaine base to Susan Peake, a confidential informant of the Kalamazoo Valley Enforcement Team, Defendant surmises four grounds for relief. First, Defendant contends that the origin of the cocaine base was not adequately confirmed. Second, Defendant criticizes the police for failing to check the cocaine base for fingerprints. Third, Defendant admonishes the police for failing to recover the marked funds used in the cocaine base transaction. Finally, Defendant argues that the Government's witnesses, Fance and Peake, provided conflicting and self-serving testimony.

The Court of Appeals for the Sixth Circuit has held that "[c]ircumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986). It is well-settled that an accomplice's uncorroborated testimony may support a conviction. *See United States*

*v. Owens*, 426 F.3d 800, 808 (6th Cir. 2005); *Spearman*, 186 F.3d at 746. A mere challenge to a witness's credibility, "packaged as an insufficiency of the evidence claim," cannot undermine the sufficiency of the evidence. *United States v. Barnett*, 398 F.3d 516, 522 (6th Cir. 2005).

When viewed in a light most favorable to the Government, the Court finds that rational jurors had ample evidence to convict Defendant. Specifically, jurors could have believed the testimony of the Government's witnesses and determined guilt based on Defendant's flight from the scene of the crime.[1] Thus, Defendant's Motion for Judgment of Acquittal will be denied.

B. Motion for New Trial

1. Sequestration Order

Defendant's Motion for New Trial seeks relief on four grounds. Defendant first argues that Officers Theodore Westra and Sheila Goodell violated the Court's sequestration order[2] by questioning Peake about her direct examination testimony during a recess preceding cross-examination. It is undisputed that Peake was asked to "explain"[3] her testimony because it was inconsistent with a previous statement to the officers. It is also undisputed that Peake changed her

---

[1] Although the Supreme Court has expressed some concern regarding flight instructions, *see Alberty v. United States*, 162 U.S. 499, 508–09 (1896), *Wong Sun v. United States*, 371 U.S. 471, 483 n.10 (1963), the Sixth Circuit has held that a Defendant's flight is generally admissible as evidence of guilt and that juries are vested with the power of determining how to weigh such evidence. *United States v. Swain*, 227 FED App. 494, 497 (6th Cir. 2007) (citing *United States v. Touchstone*, 726 F.2d 1116, 1119 (6th Cir. 1984)).

[2] Although neither the parties nor the Court can definitively recall whether the Court ordered trial witnesses sequestered, it is unnecessary to request a trial transcript. For purposes of discussion, the Court assumes sequestration was ordered since it is a typical trial practice.

[3] Defendant presents no real argument that the officers coached Peake or encouraged her to tailor her testimony to that of a witness. Defendant posits that Peake may have been asked to tailor her testimony to Fance's anticipated testimony. Seeking a mere explanation from Peake as to why she changed her previous statement does not violate the purpose of the sequestration rule. *See United States v. Green*, 305 F.3d 422, 428 (6th Cir. 2002).

3

testimony on redirect examination from direct examination.[4]

"[I]n order for a party to receive a new trial based on a district court's failure to exclude testimony, we have [] held that the party must show that the error prejudiced its right to a fair trial." *United States v. Solorio*, 337 F.3d 580, 593–94 (6th Cir. 2003) (quoting *United States v. Rugiero*, 20 F.3d 1387, 1394 (6th Cir. 1994)). Defendant fails to show prejudice. The Government notified Defendant, before trial, that Peake would testify that Defendant showed up alone to sell her cocaine base on several occasions during 2005 and 2006.[5] The authority cited by Defendant supports finding a sequestration order violation only when a witness is influenced to make his or her testimony conform to a witness who has *already testified*. *See, e.g., Gerders v. United States*, 425 U.S. 80, 87 (1976) (referring to a witness tailoring testimony to "earlier witnesses"). Since Fance had not yet testified, it is difficult to ascertain how Peake's testimony on redirect examination violated the sequestration order.

Further, it does not appear that Defendant was prejudiced by such testimony. Defendant had a full and fair opportunity to question the officers and Peake about their conversation outside the courtroom. Defense counsel implied the impropriety of this conversation to the jury in closing arguments, thereby reducing any prejudicial effects on Defendant. In addition, the Court gave the

---

[4]On direct examination, Peake testified that between 2005 and 2006, she never purchased cocaine base from Defendant when he was by himself. On redirect examination, Peake testified that she purchased cocaine base from Defendant on several occasions when he was by himself. Ms. Peake testified that her direct examination testimony was the product of an innocent mistake. *See* Sixth Circuit Pattern Jury Instruction 1.07 (2005 ed.). Defense counsel was given full opportunity to cross-examine on that point.

[5]Defendant admits that Peake's testimony during redirect examination "more closely mirrored the testimony that the government had indicated she would be giving." (Mot. for New Tr. 3.) Defendant cannot show surprise or prejudice when Peake testified on redirect examination exactly as Defendant originally thought she would.

4

standard Jury Instructions regarding prior inconsistent statements. The Court finds that the interest of justice does not require a new trial because defendant has not demonstrated a showing of prejudice. In addition, in a new trial, if granted, there is little likelihood Peake would again testify inconsistently.

### 2. Redirect Examination

Based again on Peake's redirect examination, Defendant argues that the Court erred in allowing the Government to question Peake beyond the scope of cross-examination. On cross-examination, defense counsel did not question Peake concerning any cocaine base transactions between herself and Defendant, except the transaction for which Defendant was arrested. Thus, Defendant argues, it was improper for the Government to bring up this subject during redirect examination by asking Peake to "explain" her direct testimony. The Court finds Defendant's argument baseless. Once Peake testified contrary to her statement given to officers, the Government could have recalled the officers to impeach Peake. After doing so, the Government could have recalled Peake and allowed her to explain the discrepancy. Instead of undertaking this superfluous procedure, the Government streamlined the trial by using Peake's redirect examination to efficiently accomplish the same purpose. Over objection, the Court agreed with the Government's procedure. *See* FED. R. EVID. 611.

Upon review, the Court again finds that the scope of the Government's redirect examination was proper. Defense counsel also had full opportunity to explore Peake's inconsistent testimony on recross-examination so Defendant has not been prejudiced. The interest of justice does not mandate a new trial because there is no showing that a new trial would be more fair or that Peake would again give inconsistent testimony.

### 3. Res Gestae

Defendant's next argument concerns unexpected testimony given by Fance. During Fance's proffer, taken several weeks before Defendant's trial, Fance chronologized to case agents the events on the day Defendant was arrested. Fance told agents that, *inter alia*, Defendant made a cocaine base[6] delivery while the pair were en route to deliver cocaine base to Peake (hereinafter "the first delivery").[7] Officer Goodell compiled a summary of Fance's statements given during his proffer (hereinafter "the summary") but failed to include this detail, as well as potentially many others.[8] The Government thereafter gave a copy of Fance's statement to defense counsel. During Fance's testimony at Defendant's trial, Fance mentioned the first delivery while describing the events that preceded Defendant's arrest. Neither the Assistant United States Attorney nor defense counsel was aware of the first delivery prior to Fance's testimony.

Over defense counsel's objection, the Court ruled that testimony concerning the first delivery did not implicate Federal Rule of Criminal Procedure 404(b) and that it constituted permissible res gestae evidence. The Sixth Circuit has clarified the scope of permissible res gestae evidence. "Background or res gestae evidence consists of those other acts that are inextricably intertwined with

---

[6]Defendant believes Fance testified that the first delivery involved powder cocaine, not cocaine base. A transcript request is not necessitated to clarify this disagreement because this distinction, although relevant in many cases, is irrelevant in this case. It was established at trial that Defendant possessed a sizable quantity of powder cocaine that he intended to sell. Whether Defendant actually converted this powder cocaine into cocaine base, or whether Defendant sold it "as is" to the buyer in the first delivery, is insignificant. Regardless of the cocaine's form, it originated from Defendant. Also, there was an abundance of testimony to establish that Defendant's offense involved more than five grams of cocaine base.

[7]At trial, neither party inquired about the name of the buyer in the first delivery, the buyer's address, or any other substantive information.

[8]The Court notes that proffers often take hours and are summarized on a few pages by case agents; undoubtably, not everything said by Fance was included in the summary.

the charged offense or those acts the telling of which is necessary to complete the story of the charged offense." *United States v. Till*, 434 F.3d 880, 884 (6th Cir. 2006) (citing *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000)).

> Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

*United States v. Olender*, 338 F.3d 629, 637 (6th Cir. 2003).

Defendant argues that evidence of the first delivery is not res gestae evidence but is instead governed by Rule 404(b). Upon review, the Court concludes that it reached the correct result at trial. Fance's testimony concerning the first delivery is inextricably intertwined with the cocaine base delivery to Peake for the following reasons: (1) the first delivery was a prelude to the delivery to Peake; (2) both deliveries have a close temporal connection because the first delivery occurred shortly in time before the delivery to Peake; (3) the first delivery occurred while en route to the delivery to Peake; (4) both deliveries have a spatial connection because they occurred in fairly close proximity;[9] (5) the first delivery is directly probative of Defendant's mental state and the charged offense; (6) the cocaine base in both deliveries originated from Defendant. Based on these facts, the Court finds that Fance's statement concerning the first delivery "is necessary to complete the story of the charged offense." *Till*, 434 U.S. at 884. Therefore, Defendant has failed to demonstrate that the interest of justice requires award of a new trial.

    4. Jencks Act

Defendant's final argument concerns defense counsel's "surprise" after Fance testified about

---

[9]The Court infers this fact based upon the context of Fance's testimony. As noted, the exact address of the first buyer is not contained in the record.

the first delivery. Defense counsel argues that since he did not know about the first delivery before Fance testified, he was unable to adequately prepare for trial or formulate a cohesive trial strategy because he relied on the summary provided by the Government. Defendant also contends that the summary materially misrepresented that it was a "complete" statement, which the Court interprets as meaning that Defendant did not expect for Fance to testify to any material[10] facts beyond those contained in the summary. Because Defendant's argument necessarily implicates the discovery available in criminal cases, the Court will address this issue first and then Defendant's argument concerning the completeness of the summary.

The discovery available to criminal defendants is generally governed by three rules: (1) Federal Rule of Criminal Procedure 16; (2) the doctrine set forth in *Brady v. Maryland*, 373 U.S. 83 (1965); and (3) the Jencks Act, 18 U.S.C. § 3500. Rule 16 requires the government to disclose, upon request, any oral or written statements of the defendant, the defendant's prior criminal record, certain documents and objects, reports of examinations and tests, and a summary of expert witness testimony. Fed. R. Cr. P. 16(a). The *Brady* doctrine requires the government to disclose "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment." *Brady*, 373 U.S. at 87. Clearly, the summary does not fall under the ambit of Rule 16 or *Brady*.

The Jencks Act requires production of any statements by a witness who has testified on direct examination for the government. These statements include, *inter alia*, "(1) a written statement made by said witness and signed or otherwise adopted by him" and "(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such

---

[10] The Court reserves opinion on whether this fact is material.

oral statement." 18 U.S.C. § 3500(e); *United States v. Minsky*, 963 F.2d 870, 875 (6th Cir. 1992).

One purpose of the Jencks Act is to prevent "the undiscriminating production of agent's summaries of interviews regardless of their character or completeness." *United States v. Dorman*, 108 FED App. 228, 245 (6th Cir. 2004) (citing *Palermo v. United States*, 360 U.S. 343, 350 (1959)). It would "be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations and interpolations." *Palermo*, 360 U.S. at 350. Where the witness has adopted or approved the agent's notes, however, this risk does not exist. *Dorman*, 108 FED App. at 245 (citing *Goldberg v. United States*, 425 U.S. 94, 107 (1976)).

Defendant argues that the summary is covered by the Jencks Act because it was adopted by Fance, however, he provides no evidence, no authority, and mere conclusory statements to support this proposition. The Jencks Act does not presume adoption—there must be an affirmative act by the witness. *See* 18 U.S.C. § 3500(e)(1). The Supreme Court has stated that "Congress desired that [the witness'] signature or some other form of approval be shown to assure authenticity." *Campbell v. United States*, 365 U.S. 85, 104–05 (1961). "The required approval would also quiet any doubts that the witness had an adequate opportunity to scrutinize for verification the document . . ." *Id.* at 105. According to the Sixth Circuit's "Adoption Test" set forth in *United States v. Nathan*, 816 F.2d 230, 236–37 (6th Cir. 1987), and *United States v. Arnold*, 890 F.2d 825, 829 (6th Cir. 1989), the government must produce its report or any notes taken from a witness' statement "if the notes from the interview were read back to and verified by the witness *and* if the report summarized the notes without material variation." *Arnold*, 890 F.2d at 829 (citing *Nathan*, 816 F.2d at 237). Upon the Court's examination of the summary, it is blatantly void of Fance's signature and otherwise contains

nothing to indicate Fance adopted it. Therefore, the Court finds that the summary of Fance's statement is not governed by § 3500(e)(1) of the Jencks Act.

The summary of Fance's statement also does not fall under § 3500(e)(2) of the Jencks Act because it is not a verbatim transcription of an oral statement. Officer Goodell testified that her compilation of Fance's statements during his proffer were in her own words and left out many statements made by Fance; hence, it was a "summary." The fact that numerous details were left out, such as Fance's statement about the first delivery, demonstrate that the summary was not a transcribed oral statement. The proffer cannot "fairly be said to be the witness' own" because it was not "substantially verbatim" or "contemporaneously recorded." *United States v. Lonardo*, 350 F.2d 523, 527 (6th Cir. 1965).

Now that the discovery issue is resolved, the Court turns to Defendant's argument concerning the completeness of the summary. Essentially, the Government bestowed a courtesy upon Defendant by providing the summary. Defendant now seeks to punish this courtesy by arguing that the summary was incomplete and that Defendant had a *right* to rely on it, although Defendant fails to cite any authority for this proposition. Defendant's argument has broad implications because if a summary--voluntarily provided by the Government--later turns out to be incomplete, the new statements that complete the original summary cannot be introduced into evidence.[11] This type of reasoning seemingly tries to incorporate itself into the pool of caselaw that holds that due process is violated when the government *deliberately* misleads a defendant to his prejudice. *See Cook v. Anderson*, No. 1:96cv424, 2007 WL 2838959, at *4 (S.D. Ohio Sept. 26, 2007) (citing *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)); *cf. Gray v. Netherland*, 518 U.S. 152, 165 (1966) (holding that

---

[11] Also troubling for Defendant's argument is the fact that nothing on the summary indicated that it was a "complete" statement.

10

the government owes a duty of candor to defense counsel). Absent bad faith on the government's behalf or a deliberate intent to mislead, a defendant has no right to rely on a summary of a witness's statements voluntarily provided by the Government as an inalterable "script" for what the witness will testify to at trial. It is indeed rare when a witness's testimony is <u>exactly</u> in accord with previous statements: perhaps a new detail is added, a detail is omitted, or the testimony is given from a different perspective usually based on the wording of the questions. As an able and experienced trial attorney, defense counsel knows this.

The Sixth Circuit dealt with a similar claim in *United States v. King*. In *King*, the government voluntarily furnished to the defendant, at a time well prior to the time required by the Jencks Act, statements of government agents who would testify at the defendant's trial. 521 F.2d 356, 358 (6th Cir. 1975). The defendant claimed that these statements were incomplete and that they induced reliance on his behalf. *Id.* The *King* Court found the defendant's claim without merit because there "was no evidence that the government acted in bad faith in providing incomplete summaries, and [the defendant] was not entitled to rely upon the fact that the statements could not be changed or supplemented at trial." *Id.*

The Court finds that the Government's conduct—as well as Defendant's trial—was fair and comported with due process. Not only was the Government under no obligation to give the summary to defense counsel, defense counsel mitigated any "surprise" it may have had during cross-examination. Defense counsel cross-examined Fance as well as Officer Goodell, who testified that she inadvertently left Fance's statement about the first delivery out of the summary. Defense counsel capitalized on the first delivery being left out of the summary by arguing that it was either intentionally done to mislead the defense or done in reckless disregard of the Government's

11

obligation not to mislead.  The Court finds that there is absolutely no prejudice stemming from the Government's actions and that the interest of justice does not require a new trial on this issue.  Accordingly, Defendant's Motion for a New Trial will be denied.

## IV.  CONCLUSION

In accordance with this Opinion;

**IT IS HEREBY ORDERED** that Defendant Timothy Pope's Renewed Motion for Judgment of Acquittal (Dkt. No. 62) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for New Trial (Dkt. no. 64) is **DENIED.**

December 12, 2007              /s/ Paul L. Maloney
                               PAUL L. MALONEY
                               United States District Judge